## Case No. 1,809.

### In re BRAND.

[2 Hughes, 334;¹ 3 N. B. R. 324 (Quarto, 85); 2 Am. Law T. Rep. Bankr. 66.]

District Court, D. West Virginia. Aug. 28, 1867.

BANKRUPTCY — PROOF AND PAYMENT OF DEBTS — LIENS—STATE TAXES—SECURED DEBT—WAIVER OF SECURITY—PRESUMPTION IN FAVOR OF INNOCENT CREDITORS.

1. A state has in her sovereign capacity a lien on all her realty for taxes.

¹ [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

2. Such lien has priority over any claim of one of her citizens, no matter when such claim may have been acquired.

[Cited in Re Southwestern Car Co., Case No. 13,192.]

3. A creditor, ignorant of his legal rights, will not be held, in the absence of proof of fraud, to intend what his innocent acts imply, particularly if such creditor be acting in a fiduciary capacity.

[Cited in Re Montgomery, Case No. 9,729; Re Hope Min. Co., Id. 6,681; Re McConnell, Id. 8,712; Re Parkes, Id. 10,754; Napier v. Server, Id. 10,010 (in brief); Re Baxter, 12 Fed. 75.]

[4. Cited in Re Stansell, Case No. 13,293, in Re Jaycox, Id. 7,242, and Merchants' Nat. Bank of Syracuse v. Comstock, 55 N. Y. 24, to the point that a creditor who proves his whole debt as unsecured, without disclosing the security, thereby waives and relinquishes his lien.]

In bankruptcy.

JACKSON, District Judge. In this case the register certifies that the petition was filed on the 28th day of August, 1867, and that on the following day the petitioner was duly adjudged a bankrupt. At the first meeting of creditors, which took place on the 28th day of September ensuing, among other debts filed with the register against the bankrupt, were debts due Peter Banackman, James Way, executor of Gideon Way, deceased, and the state of West Virginia. The register further certifies that they were proved in the usual form under the twenty-second section of the act. [Act 1867; 5 Stat. 527.] On the 5th day of March, 1868, one John Kinkaid filed his affidavit, setting forth that he was the holder of a single bill for one thousand dollars, executed by the bankrupt, and secured by deed of trust on his estate, claiming a lien by virtue of said trust, and insisting on his rights under the same. Upon the foregoing facts, four questions arise, three of which are certified by the register for decision.

1. Can the register direct the payment of "debts due the state, and assessments made under the laws of such state," to the prejudice of a creditor who has a prior lien? It is a well-settled principle that the assignee of a bankrupt takes his estate subject to all the liens against the same, as well as all the equities existing against it. The assignee merely succeeds to the rights of the bankrupt, and is affected by all limitations imposed by law against the bankrupt's estate antecedent to his accepting the trust. Courts in bankruptcy invariably respect bona fide liens obtained against a bankrupt anterior to his adjudication as a bankrupt, if not within the prescribed period. By the twentieth section of this act liens are expressly provided for. They are usually created in this country by the force and operation of statutes enacted by the several states thereof. In this state liens are created by statute in the form of trust deeds, judgments, and at-

tachments. If, therefore, the debts filed before the register are, as it is claimed, liens upon the bankrupt's estate, and the parties in interest have not abandoned or waived their rights under their liens, they must be discharged according to their priorities, unless one of the liens should be for taxes due the state. She has in her sovereign capacity, a prior lien on all of her realty for taxes, and an undoubted right to enforce their collection to the prejudice of any claim due one of her citizens, although such a lien may be acquired subsequent to that of a judgment or trust creditor. If her lien, however, be for a debt other than taxes, she is not entitled to any preference over other creditors of the same class. I am not aware of any statute that gives her special rights and privileges over the general creditors by reason of the fact that she is the state. The character of the debt due the state does not appear from the certificate of the register. If, however, it is a lien upon the bankrupt's estate (and is not for taxes) the register will treat it as other liens to be preferred according to its date, and must be discharged before there is a general distribution of the assets. But should it prove to be merely a debt due the state without a lien having been acquired, then after the specific liens are discharged the register will direct the payment of such debts as are of the preferred debts, class 3, under section 28, out of the general assets.

2. As to the lien set up by Banackman. I concur in the conclusion of the register that it was destroyed. It was acquired under the process of attachment, and before judgment was had the debtor filed his petition in bankruptcy within four months after the suing out and levying of said attachment, thereby dissolving the attachment under the provisions of the fourteenth section. This action upon the part of the debtor necessarily compels the attaching creditor to resort to his only other remedy, that of proving his claim as a general creditor, which he wisely did at the first meeting of the creditors.

3. Did Way's executor waive his lien in appearing before the register and filing proof of a debt against the bankrupt, alleging that it was secured by deed of trust upon his estate? Supposing the lien not to be waived, the principles already stated would govern the question presented, and the debt would be discharged accordingly. It is contended, however, that the executor proved his debt in the ordinary way, and must be held to have waived and abandoned his rights under the lien. It cannot be denied that such action upon the part of the executor tended to that result, and that the register might reasonably reach such a conclusion. I think, however, upon a careful examination of the twentieth section of the act, one important thing essential to the waiver and abandonment of a lien has been omitted in this instance. One of its provisions requires a creditor who holds a lien either to release or convey his claim to the assignee before he can be admitted to prove his whole debt. No such release or conveyance was made. The affidavit filed before the register states the fact that the debt "was secured by deed of trust." At its filing the register should have called the attention of the creditor to the fact that he held a security for his claim, and inform him that before he could prove his whole debt as a general creditor he must surrender his security to the assignee. It appears that he did inform him "that proof of his claim would place it upon the footing of a common creditor," but failed to notify him that a creditor holding a security cannot prove his debt without accompanying it with a release or conveyance of such claim to the assignee. If the creditor had been fully advised of his rights, he would have discovered that he could resort to one of three remedies: he could elect either to rely upon his security, or abandon it and prove the whole debt, or be admitted as a creditor only for the balance. No such election was made, but the register permitted him to file his proof without releasing or conveying his claim to the assignee upon the property held as security until such release or conveyance was filed; no proof of the debt as a general creditor should have been received. Any attempt upon the part of the creditor to prove a debt before a register without complying with the conditions imposed by law, should be disregarded by him. In this instance it is apparent that the party was ignorant not only of what the law required, but also of his legal rights in the premises. It is also manifest that no fraud was intended, as he voluntarily disclosed his security, otherwise fraud would have been presumed, and the security forfeited. It is competent, however, to explain such a presumption and remove the taint, and under such circumstances a court of bankruptcy in the exercise of its discretionary power would permit a creditor to withdraw the proof of his claim before the register and rely upon his security. The action of the creditor in this case presents the naked question, whether being ignorant of his legal rights he shall be held to intend what his acts would seem to imply. I think not. It is manifest from his affidavit that his object was to give the assignee notice of his claim, and it evidently did not occur to him that in doing so he would waive any legal right. His action merely showed a want of familiarity with the provisions of the law. This fact should not operate to his prejudice, when we know that much diversity of opinion exists in the courts as to the true construction of some of its most important provisions. For the reasons assigned, I am not disposed to require a creditor, who inadvertently or ignorantly proves his debt unaccompanied with fraud, to surrender his lien and participate in the

general distribution of assets, but feel inclined to permit a creditor under such circumstances, if he elect to do so, to withdraw the proof of his debt and rely upon his security. In the case of Ex parte Harwood [Case No. 6,185], the court recognize this principle, and affirm that a creditor holding collateral security proved his debt, but afterwards showing that he was ignorant that the proving of the debt debarred him of his security, he was allowed to withdraw the proof. The case of Stewart v. Isidor [5 Abb. Pr. (N. S.) 68], cited to sustain the ruling of the register on the point, is not in conflict with the principle just announced. In that case there was a strong presumption of fraud, founded upon the fact that the creditor proved his claim and failed to disclose his security. The case turned upon this point, the court holding that "a secured creditor who proves his claim without referring to the security forfeits the security." Had the creditor in that instance disclosed his security, it is manifest that the court would have remitted him to his rights under it, unless he waived it. Another consideration to some extent influences me in reaching my conclusions. This creditor is acting in a fiduciary capacity, being the legal representative of an estate. I am not, therefore, disposed to sanction acts of his which might tend to the manifest injury of the estate, unless they are too plain to admit of doubt. For the reasons assigned I cannot concur with the ruling of the register on this point.

4. Some of the reasons just assigned apply with equal force to the claim of Kinkaid, and sustain the register in refusing to treat his affidavit as "proof of debt and as an abandonment of his lien." The affidavit in general describes the debt, sets up the lien, and affirms that the creditor "still claims and insists" upon his security. It is apparent from the affidavit that Kinkaid did not intend to prove his claim, but merely to notify the assignee of his rights, and that he should rely upon his lien for protection. I concur with the register in his ruling on this point.

I am therefore of the opinion, 1. That the lien of the state for taxes is paramount to all others and should be first paid. 2. That the lien of Banackman being under mesne process was destroyed in this instance by the act of the debtor in suing out his petition in bankruptcy within four months after the suing out and levying the process of attachment. 3. That under the state of facts in this case, neither Way's executor nor Kinkaid will be held to have abandoned their liens. But the register will require them to make their election as between proof of claim and participation in the general assets, or a resort to their securities, in which event they are permitted to withdraw their claims and assert their rights under their securities.